Wheelbb, J.
The questions presented for our consideration are, whether, upon tiie facts iu evidence, the District Court was authorized to annul the decree of the probate court; and whether there was any error in the instructions to the jury of a character to require the reversal of the judgment.
There can be no question that the inducement to the making- of the contract on the part of Jolinson had wholly failed before the period of performance by him arrived. Iludgius had practiced a fraud upon Johnson by drawing in his favor upon one in whose hands he had no funds, and without any good reason to believe his draft would be honored. He had failed to perform liis contract in every particular, aud his insolvency rendered his performance hopeless and his vendor remediless by suit to enforce the contract. The only recourse left him was to disaffirm and put an end to the contract. This he did ; and that, under the circumstances, it was his right to rescind the contract, cannot admit of a question. Certainly no court of equity would enforce a contract at the instance of the vendee under the circumstances of this case, nor would hesitate to decree its rescission at the instance of the vendor. (Story on Cont., 834, 977, 3d edit.; Story’s Eq. Ch., 17, 18 ; 2 Kent. Ch., 39.)
Johnson, in his lifetime, rightfully treated the contract as at an end. And.' it was not within the power of third persons, by any agreement of theirs respecting its subject-matter, made after his death, and when his estate
*120 Appeal from Bed Biver. The record disclosed that on the 15th day ■of May, 184(1, James'II. Johnson, since deceased, bnt then residing in Bed Biver county, entered into a contract with TIios. Hudgins, then o£ Virginia, lor the sale ol a tract of land containing forty-two lmndrod acres, which contract •contained (he following stipulations: “The said Hudgins agrees to pay the “said Johnson, or his order, the sum of three thousand six hundred dollars, “of which two thousand live lmndrod dollars are to be paid in four months •“from this date, and the remainder, of eleven hundred, on or before the first “day of January, A. D., 3848; and the said Johnson agrees on his part, when “the said Hudgins shall make the first payment according to the tenor of this “ contract, and shall execute his note with good and sufficient security for the “remainder, that he will make a warrantee deed to the said Hudgins for said “tract of land, with all the improvements thereon; possession to be given on “the first of next January, or sooner if convenient.”
For (he. first payment (of twenty-five lmudred dollars) stipulated in the contract Ilndgins drew a bill of exchange in favor of said Johnson on one Spotts, -of Virginia, payable at four mouths. The bill was duly presented at maturity, and protested for non-payment, and in December thereafter, Johnson elected wholly to disaffirm the contract, and advertised the land in question for sale. Johnson 'died in January, 1S47, without having effected a resale of the land; and in May, 1848, Todd administered on his es'tate. In May, 1849, Wortham, as the assignee of Hudgins, filed his petition in the probate court, in pursuance of article 1162 of the Digest, to obtain a decree authorizing the administrator of Johnson to make him a title to the land. The petition set out the contract between Johnson and Hudgins and its assignment to the plaintiff by the latter. • It stated that after the payment of the first instalment by the said Hudgins, and before tire maturity of the last, “Johnson departed this life, not “ having made a deed to the land according to the terms of -his contract,” &c. The administrator answered, expressly admitting the facts as stated in the petition, and adding that he believed it would be to the interest of the ■estate to carry out the contract by a specific performance. The probate court thereon gave judgment that the administrator make title in accordance with •the prayer of the petition.
The widow of Johnson, who had intermarried with Caldwell, jointly with her present husband and the heirs of her former husband, brought this suit, under the provision of the Digest, to annul and set aside the order of the pro-Ibate court.
The material facts disclosed by the record, in addition to those already stated, ¡are that at the time of the contract of sale Johnson was in embarrassed cir■cumstances, and was pressed for money; that he owed debts to a considerable .amount, which lie was desirous to pay, and particularly a judgment in favor •of Glasgow and Harrison, recovered in 1844, for about thirty-eight hundred dollars; that upon receiving the draft before mentioned from Hudgins he .assigned and placed it in the" hands of Harrison, agent of Glasgow and Harrison, under an agreement that the amount, when paid, should be credited upon tlie judgment. On being protested the draft was returned to Harrison, who still retained it unpaid, and has not presented it as a claim against the estate of Johnson. Hudgins had no funds in the hands of Spotts, either at the date or maturity of the draft. There was an attempt to show that he “ might have “supposed he had some claim” upon the drawee. It was also agreed between Johnson and Harrison that when Hudgins should execute his note with security for the balance of the purchase-money, as specified in the contract, he, narrison, •would receive and credit it upon the judgment.
In October, 1847, after the death of Johnson and before the appointment of ¡his administrator, an agreement was entered into between Todd, as the agent ■of Hudgins, and Wortham and Harrison, by which Todd assigned the interest ■of Hudgins in the. contract between him and Johnson to Wortham for the consideration of forty-six hundred dollars, to be paid to Harrison in satis- *121 was unrepresented, to impart to that contract anew legal vitality, and render it obligatory on his estate. There conld not be the semblance of an authority in Todd, Wortham, and Harrison, by their agreement, entered into October, 1847, to créalo an obligation binding on Johnson's estate, or in any manner to affect the legal rights of the heirs aiid distributees of that estate who were not parties to that agreement. As to them, it was a mere nullity, whatever may-have been its effect as between the parties to it.
In Johnson’s lifetime the contract would not have been enforced against him. After his death it was not obligatory upon his heirs and legal representatives. ITe had agreed with Ilarrison to appropriate, tlie proceeds of tlie sale of the land f.= Míe paya, -it of the judgment against him, of whi ;h the latter had control! But these p -•« needs were not received. ,J’he laud h..-l increased in value, and' i he relative : tnation of the parties may have been materially changed. Had' Johnson li\ ei!, it is not certain that he would have as-sented to tlie new arrangement for paj iug- that judgment. That, at least, would have been a question for his decision, and it is very clear that, after his death, and when he had no-legal representative, another could not make a contract for him which could be obligatory upon his succession.
When,"therefore, the suit was instituted in t}ie probate court to enforce specific performance upon tlie contract-, it was not legally obligatory on the estate, and had the suit been resisted and tlie facts truly presented, we must suppose the. court would have refused to decree a conveyance. Could the administrator, l>3’his admission in favor of one cognizant of tlie. facts, as it is evident tlie plaintiff in that proceeding must have been, divest the right of those interested in the estate? We think not. His voluntary conveyance of the property by private sale would have been ineffectual to pass the title. And it is not perceived that the having clothed it in the forms of a judicial proceeding can impart to what was, in fact and substance, but a private sale or transfer of the property of tlie óslate, any validity or-binding force, especially when brought in question under the statute, which divests the judgment of its conclusive character, and authorizes an inquiry into its merits.
Tlie agreement of October, 1847, was doubtless made, and the order of the probate'court to effectuate that agreement was obtained by the administrator of Johnson, under the belief that the best interest of the estate required that Harrison’s judgment should be settled with tlie proceeds of this land. The administrator had no interest in bringing about that result, and no motive to-do otherwise, than discharge faithfully liis trust as the representative of the deceased. But though no fraud upon the heirs and creditors of the estate was in fa.et intended, and the motives of the administrator are free from tlie suspicion of unfairness, it cannot lie doubted that his acts, which are now brought iu qucslio-i, may liav.e operated as a franc! upon the rights of tiloso interested' in tlie (-state, and that tlie law will regard tlie transaction in that light. It was an attempted evasion of tlie legal principle that an administrator cannot transfer by prívalo sale the property of the estate. It was the doing of that, under the form and cloak of a judicial proceeding, which the law did not authorize. The law will not permit its forms to be thus employed to evade or subvert its principles. It will not sanction the attempt t-lms to cloak an unauthorized and-illegal act under its forms, though obtained at the seat of justice through the instrumentality of its officers. And this ground, it is conceived, was'amply sufficient to authorize the annulling and vacating of the order of the probate-court.
It was insisted in argument that the probate court had not jurisdiction under tlie statute to make the order in question. In this view we do not coincide. Tlie petition presented a case within the jurisdiction of the court, and it unquestionably was competent for the court to take cognizance of the case. But to entitle the plaintiffs to maintain their action to set aside the order of the probate court it is not necessary that it should have been made in a case of which that court had not jurisdiction, or that it should have been procured by fraud. It is sufficient if, in the language of tlie statute, good cause be *122 shown why it should not have been made. (Hart. Dig., art. 1162; Jones v. Taylor, 7 Tex. R., 240.) That this has been done in the present ease is, we think, entirely free from doubt.
It is deemed unnecessary to enter upon a critical examination of the charge •of the court. In its application to the facts of the ease it was substantially correct. The instruction asked by the defendants and given by the judge with an addition might well have been refused as not authorized by the evidence, and as calculated to mislead the jury. That time is of the essence of the contract may or may not be true in reference to the facts of a given case. It has been well said that “if the thing sold be of greater or less value according to the efflux of time, it is manifest that timé is of the essence of the contract, and a stipulation as to time must then be literally complied with in “ equity as well as in law.” (2 Story Eq., 775, n. 1, 8th edit.) But in the present case the instruction upon this point was immaterial, for the reason that at the lime and under the circumstances of the case, the vendor had the right to rescind the contract, and no valid or binding act was afterwards done in reallirmanee of it. The instructions of the court may be obnoxious to criticism in other respects; but we see nothing in them considered in reference to the facts of a character to mislead or which it is conceived can have misled the jury.
The view we have taken of the case dispenses with the necessity of entering upon the examination of some interesting topics discussed in the very elaborate and able argument of counsel. We are of opinion that there is no error in the judgment, and that it be affirmed.
Judgment affirmed.