BARNETT & RECORD COMPANY v. H. B. FALL.

Decided October 22, 1910.

**1.—Appeal—Defective Brief—Rule 31.**

An assignment of error will not be considered when it is not followed by a statement from the record explaining and supporting the proposition thereunder, as required by Rule 31.

**2.—Same—Evidence—No Objection in Trial Court.**

An assignment of error based upon the admission of evidence will not be considered when the record does not show that any objection was made in the trial court.

**3.—Debtor and Creditor—Fraudulent Sale—Title.**

As between a debtor and creditor no title passes out of the debtor in an attempted sale by him for the purpose of defrauding the creditor when the vendee or transferee participates in the attempted fraud. In contemplation of law the title remains in the debtor.

**4.—Garnishment—Answer—Receipt of Effects, Time When.**

The answer of a garnishee should include effects of the debtor coming into his hands between the date when the writ was served and the date when his answer was filed.

**5.—Judgment—Evidence—Presumption.**

In the absence of specific findings of fact to the contrary, the judgment of the trial court will not be disturbed if there is any phase of the evidence which will support it.

**6.—Garnishment—Title to Effects—Evidence.**

In a garnishment proceeding, contract and evidence considered, and held sufficient to support a finding that the title to certain logs or piling had passed out of the debtor and vested in the garnishee at the time the writ was served, and this, though the piling was in course of transportation to its destination and was invoiced to a different party.

**7.—Sale—F. O. B.**

An agreement to sell goods f. o. b. cars at a designated place will ordinarily be regarded as an agreement to deliver the goods at such designated place; but the meaning of the term f. o. b. depends on the connection in which it is used, and if the meaning of the contract is doubtful the construction placed on it by the parties will be adopted. Contract for the sale of logs f. o. b. cars at place of destination considered, and held, when construed in the light of the evidence and the dealings of the parties, to mean that the title to the logs should pass when the logs were delivered to an agent of the buyer at an intermediate point.

**8.—Fraudulent Conveyance—Parties—Practice.**

A fraudulent vendee although a proper is not a necessary party to a suit attacking the conveyance or transfer. The failure of the plaintiff to make such

vendee a party to the suit should be taken advantage of by plea in abatement or by exception in the trial court, otherwise the point can not be raised on appeal.

Appeal from the District Court of Galveston County. Tried below before Hon. Robert G. Street.

*Walter Gresham*, for appellant.—A garnishment bond signed by a company as surety must show on its face (a) that such company is duly incorporated; (b) the name of the company signed to the bond must be the same as the name written in the body of the bond; (c) the bond must be signed by one purporting to be authorized to sign the name of the corporation; (d) the bond must be under the seal of the corporation; and (e) reference to the seal of the corporation being attached should be made in the body of the instrument. Gen. Laws, 1897, p. 244, secs. 3, 4 and 9; 5 Cyc., p. 531 (b); Rev. Stats., art. 4487; 77 Texas, 277; Lytle v. Dothan Bank, 121 Ala., 215 (26 So., 6).

The court erred in holding that under the contract to deliver to garnishee the piles f. o. b. the cars at Texas City with stop over privileges at Beaumont for treatment with creosote, the title to the piles passed from W. E. Fall and was vested in garnishee when the piles were delivered to the creosoting works at Beaumont for treatment. Medley v. American Radiator Co., 66 S. W., 86; Mensing v. Engelke, 67 Texas, 532; 20 Cyc., 1007; Wilson Hardware Co. v. Duff, 117 S. W., 440; Noyes & Fisher v. Brown, 75 Texas, 461.

The piles in possession of the railroad company as common carrier or in possession of the creosoting company at Beaumont for treatment, were not subject to garnishment. Grant v. Shaw, 16 Mass., 341; Rev. Stats., art. 222; Waples-Plater Grocer Co. v. T. & P. Ry. Co., 95 Texas, 489; 14 Am. & Eng. Ency. of Law (2nd ed.), 840-841.

When the controverting affidavit states that defendant fraudulently and without consideration conveyed property to a third party after the service of the writ, and that garnishee participated with such parties in planning and executing such fraudulent scheme, and such third party afterwards conveys such property to garnishee, and is not made a party to the suit, then garnishee is entitled to his discharge. Smith v. Texas & P. Ry. Co., 39 S. W., 971; Mensing v. Engelke, 67 Texas, 532; 20 Cyc., 994.

If the sale of Fall to Lloyd was fraudulent and without consideration, then Lloyd should have been garnisheed and not appellant. Fearey v. Cummings, 41 Mich., 376; Lee v. Tabor, 8 Mo., 322.

*Carlton & Townes*, for appellee.—Under the contract between W. E. Fall and the garnishee, title to the piling passed from Fall to the garnishee immediately upon its passing inspection at the creosote works at Beaumont, thereby rendering garnishee liable to W. E. Fall for the agreed price of such piling, less the freight and stopover charges. Orthwein's Sons v. Wichita Mill & Elevator Co., 75 S. W., 364; Maud v.

Coppinger, 56 S. W., 127; Brewer v. Blanton, 66 Texas, 532; Goldberg v. Bussey, 47 S. W., 51; International & G. N. Ry. Co. v. Ogburn, 63 S. W., 1072.

Any act of a buyer which is inconsistent with the idea of continued ownership or title in the seller, amounts to an acceptance of the property. 24 Am. & Eng. Ency. of Law, pp. 1089-90; 1 Benjamin on Sales, sec. 144; Tiffany on Sales, p. 199; Brown v. Foster, 15 N. E., 608.

Appellant, the garnishee, was answerable to appellee both for the contract price of piling which it had received from W. E. Fall, but for which it had not made payment, and also for the value of any additional property of his in its hands at the time of service of the writ of garnishment, or coming into its possession thereafter, up to the time of the filing of its answer and converted by it. Rev. Stats., art. 225; Simon v. Ash, 20 S. W., 722; Willis v. Yates, 12 S. W., 232 and 482; Focke v. Blum, 82 Texas, 443; Bell v. Stewart, 44 S. W., 925; Morris v. House, 32 Texas, 492.

PLEASANTS, CHIEF JUSTICE.—In a suit brought by H. B. Fall against W. E. Fall in the District Court of Jefferson County to recover the sum of $4575, plaintiff sued out a writ of garnishment which was served upon the appellant herein on October 10, 1903. The answer of the garnishee, which was filed on December 7, 1903, admitted its indebtedness to the defendant, W. E. Fall, in the sum of $1575.19 under a contract between said Fall and appellant by which the former had agreed and undertaken to furnish appellant with all the piling required by appellant in carrying out a contract theretofore made by it for the construction of certain improvements for the Texas City Company, at Texas City, Galveston County, Texas. The contract between appellant and W. E. Fall, and between appellant and the Texas City Company, are both set out in the answer. It is further averred that one, R. D. Chapman, was asserting a material man's lien upon all of the piling theretofore received by appellant under its contract with said W. E. Fall to secure the sum of $3591.52 claimed to be due him by said W. E. Fall.

The garnishee prayed that Chapman and the Texas City Company "and all parties claiming any interest in said sum of $1575.19 be required to intervene in this cause and that the rights of all parties in and to said funds be settled in this suit."

By an amendment subsequently filed the garnishee admitted an indebtedness to W. E. Fall of $1871.64.

The Texas City Company and R. D. Chapman intervened and filed answers, but as the questions growing out of the Chapman claim were eliminated by agreement during the progress of the trial it is unnecessary to disclose the nature of these answers.

On September 25, 1905, H. B. Fall filed his controverting affidavit to garnishee's answer, in which he states that W. E. Fall had, on or prior to the 10th of October, 1903, the day upon which the writ of garnishment was served, delivered to garnishee by delivery to and acceptance by its

duly authorized agent for that purpose, towit, the International Creosoting & Construction Company, certain enumerated pieces of piling of the approximate value under the contract of $4000. That in addition to the material delivered to the creosoting works, garnishee had in its possession at Texas City certain other piling which had been shipped to it which had not been stopped over at the creosoting works and for which garnishee did not account in its answer, and for which W. E. Fall was entitled to credit and payment at the time said garnishment was served.

On February 17, 1909, appellee filed an amended controverting affidavit in which it is alleged, in substance, that in addition to the sum admitted by the garnishee to be due the defendant W. E. Fall it was further indebted to the said Fall in the sum of $750 for piling received by it at Texas City prior to the service of the writ of garnishment, under its contract with said Fall; and the further sum of $4000 due for piling delivered by Fall under said contract to appellant's agent, the International Creosoting Company at Beaumont, Texas, prior to the service of the writ of garnishment.

It is further alleged that the contract between W. E. Fall and appellant was not a contract for delivery at Texas City, but, if affiant is mistaken in this, then that said contract as originally made was changed and modified by agreement and the acts of the parties so as to provide that delivery to the Creosoting Company at Beaumont should be considered delivery to the garnishee and render it liable to W. E. Fall for the value of said piling.

The last paragraph of this affidavit is as follows: "Plaintiff is informed and believes that garnishee failed to answer for the $4000 worth of piling described in paragraph 2 above, and the $750 worth described in paragraph 3, upon the theory that the same was transferred by W. E. Fall to W. H. Lloyd, Jr., before it was delivered at Texas City, Texas. In this regard plaintiff shows to the court that if there was any such conveyance or transfer, same was made by W. E. Fall when insolvent for the purpose of delaying, hindering and defrauding this plaintiff in the collection of his debt as herein set out, and was without consideration, and that this purpose and intent was shared by W. H. Lloyd, Jr., and the garnishee which participated with the other parties in planning and executing such fraudulent scheme, and had actual and constructive notice thereof and of the fact that same conferred no title on Lloyd to the property as against this plaintiff, and consequently Lloyd conferred none upon the garnishee, and that said property, if it was not in the actual possession of the garnishee at the date of the service of the writ of garnishment, thereafterwards came into the possession of the garnishee prior to the time of the filing of its answer and should have been answered for by it, and, the same having been converted by the garnishee, it should be held for the reasonable market value thereof.

"Wherefore, from the matters and facts above set out, it appears that said garnishee was indebted to W. E. Fall at the time of the filing of its answer in garnishment, and consequently by the service of said writ of

garnishment became obligated and liable to this plaintiff in the following sums, towit:

| | |
|---|---|
| Piling unaccounted for.................. | $4750.00 |
| Amount admitted due................... | 1871.64 |

$6621.64

"Wherefore, affiant prays that he be given judgment against the garnishee, Barnett & Record· Company, for his debt against W. E. Fall, together with interest and costs of court, and for all other relief, both general and special, legal or equitable."

The cause was tried in the court below on May 29, 1909, without a jury, and judgment was rendered in favor of appellee for the sum of $4348.23.

We deduce from the record the following conclusions of fact: The contract by which W. E. Fall undertook to furnish piling for the work being carried on by the appellant for the Texas City Company under a contract with said company, had its inception in the following letter written by W. E. Fall to C. L. Crandall, who was at that time superintendent of the Texas City Company and in charge of the improvements being made for said company by the appellant and was also the duly authorized agent of appellant for the purchase of material to be used in the construction of said improvements:

"Dear Sir:—I will furnish, as wanted by you, the following loblolly piling, f. o. b. the cars at Texas City; the prices named to include R. R. charges, i. e., freight and stop-over at Beaumont for purpose of creosoting as per weights noted opposite each item. Charges of creosoting to be paid by you. Prices are expressed in cents per linear foot. All piling to be not less than 8-inch top unless otherwise specified." Then follows a list of piling with prices.

This offer was accepted by appellant, and a considerable quantity of piling had been received by it at Texas City under said contract prior to the service of the writ of garnishment. A large portion of the piling purchased under this contract had to be treated with creosote, and for that purpose was stopped in transit at the plant of the International Creosoting Company at Beaumont, Texas. W. E. Fall purchased the piling in controversy from R. D. Chapman and the bills of lading under which it was shipped from points of origin in East Texas show that R. D. Chapman was consignor and the Texas City Company at Texas City, consignee. These bills of lading provided that the shipments were to stop at the "International Creosoting Company at Beaumont" for treatment. When the shipments reached Beaumont the piling was inspected by the superintendent of the creosoting works, and it was agreed between appellant and Fall that all piling accepted and treated by the creosoting company would be accepted by appellant. After the piling was treated at Beaumont it was shipped to Texas City upon bills of lading showing

that the creosoting company was consignor and the Texas City Company consignee.

W. E. Fall testified that it was originally planned to send invoices to appellant showing contents of cars when they left the piling camp destined to creosote works at Beaumont. It was found that there was a discrepancy in nearly every car caused by wrong lengths being billed by the camp, by pieces of piling being rejected by the inspector of creosoting works at Beaumont on account of such piling not being of the quality necessary to stand the treatment which the creosote company had contracted to give the piling and which piling when treated by them they had guaranteed to last for a certain term of years, and also by reason of there being error in the number of pieces being invoiced at the piling camp as being on a particular car. After the creosote company at Beaumont had treated the piling it was not always loaded on the car on which that specific piling came into the works. Mr. Crandall and he agreed to take the creosote works' loading ticket at Beaumont as the evidence from which his invoices should be made. These invoices to appellant were to be made out from these loading tickets, and no culls were to be taken therefrom. It was agreed that he should be paid for all piling accepted and treated at Beaumont, and that this was the only change in the contract, or, rather, mode of keeping accounts. The contract was constantly being changed as to the lengths of piling, as the work at Texas City progressed and the bottom of the bay and earth developed, which, however, was contemplated would be the case at the time the original contract was made.

Under its contract with the Texas City Company the appellant agreed to furnish all of the labor and material necessary in the construction for the Texas City Company at Texas City of the dock, sheds, trestles and elevators designated and described in said contract, and to construct said improvements in accordance with the plans and specifications attached to said contract. It was agreed that the work was to be performed under the supervision of a superintendent designated by the owners, the Texas City Company. In consideration of the covenants to be kept and performed by the appellant, contractor, the Texas City Company, owner, agreed and promised to pay the contractor the actual cost of said improvements, "including all material of every nature entering into the work, freight on material to Texas City, the cost of all labor, including the services of foreman directly in charge, freight on tools to and from Texas City, transportation of men to and from Texas City, cost of indemnity or accident insurance, and the maintenance of tools and equipment after same have been once properly and completely installed, and nine per cent of said actual cost in addition thereto, which sum of nine per cent shall constitute the entire compensation and profit of the said contractor."

This contract further provides that, "The contractor shall pay all bills for labor, freights, materials and other expenses connected with the cost of the work as the same may accrue, and shall on or about the first

day of each month render to the owner a statement of the payments so made, said statement to be accompanied by vouchers and invoices, and on or about the tenth day of the same month the amount of said statement shall be paid to the contractor. The commission of nine per cent as per the terms of this contract shall be due and payable within thirty days after the final completion of the structure and improvements to be built hereunder."

As before stated, C. L. Crandall was the superintendent in charge of this work, designated and appointed by the Texas City Company, and was also the duly authorized agent of appellant for the purchase of material to be used in constructing said improvements.

At the time the writ of garnishment was served a portion of the piling in controversy in this suit was in the possession of the Creosoting Company at Beaumont, it having been delivered to and accepted by said company under the bills of lading before described; and a portion of said piling was at said time in transit from Beaumont under bills of lading showing that it was consigned by the Creosoting Company to the Texas City Company. All of this piling came into the hands of appellant and was appropriated and used by it under its contract with the Texas City Company, prior to the time of the filing of appellant's answer. No contention is made that the amount recovered by appellee is in excess of the value of said piling or of its contract price.

The writ of garnishment was served on Saturday, October 10, 1903. On the next day Crandall telephoned W. E. Fall at Houston and informed him of the garnishment proceedings and requested him to come to Texas City and make some arrangements in regard to his contract as he, Crandall, could not afford to have the work delayed by having the material therefor tied up by a writ of garnishment. In response to this request Fall went to Texas City on Monday, the 12th of October, taking with him his brother-in-law, W. H. Lloyd, Jr. As to his purpose in going to Texas City, and the arrangements made by him with Lloyd and Crandall, he testified:

"I went to Texas City to ascertain if there were any irregularities in serving the papers there, which would enable me to defeat the garnishment, and if there were not, to save me as much as possible from the wreck; also if possible to get the contract continued on the original basis if it could be done, as there was a fair profit in it and additional business in sight. I saw Mr. Crandall and Mr. Sullivan in Texas City, and possibly, Mr. Lewis also.

"I examined the facts connected with the garnishment and made up my mind that I had no technical ground to defeat it, and then turned my attention to making the amount as small as possible. There were a number of cars of piling on the track and not unloaded, some of them set in that morning, Monday. I asked Mr. Crandall for the invoices from me covering these cars, and explained to him that I wanted them in order to erase my name and substitute another, that of W. H. Lloyd, Jr. I got them and made the change. My recollection is that Mr. Sulli-

van was present during my talk with Mr. Crandall, and that he knew what I had done. The construction corps of B. & R. Company had an office in what was known as Inman Shed, about half a mile from Texas City Company's office, and Crandall sent down there either for my invoices or to consult with the B. & R. Company's man, Mr. Koehler. We talked all the time we were waiting for these invoices, and when they got back my recollection is that I substituted Mr. Lloyd's name for mine. I told Mr. Crandall I wanted Lloyd to continue the contract as originally made with me, and I would act as Lloyd's superintendent. Crandall said he did not know what the legal effect would be, that he would take the company tug and go to Galveston and see Judge Mott.

"We went to Galveston on the tug just as soon as we could get to the wharf. When we got to Galveston, we went to Mott & Armstrong's office on Tremont Street. Judge Mott was away but we saw Mr. Armstrong, and Mr. Crandall told him what had been done and that he was desirous of assisting me, both as to making the answer small and continuing the contract under Lloyd's name. Mr. Armstrong said that the company should not attempt to interfere with the garnishment, but that the contract should be cancelled and awarded to some one else. He then gave Crandall a pencil memorandum or draft of letter to write to me, cancelling my contract, and also gave me a pencil draft of a letter to write to Crandall acknowledging this cancellation.

"Crandall wrote me the letter when he got back to Texas City, and my recollection is that I answered from Houston by mail upon my return to Houston. My recollection is that Mr. Crandall told Mr. Armstrong about changing the invoices and that Armstrong agreed that this was safe, at any rate they stood as changed.

"As I have before stated, I got the invoices and made the change. We were in the Texas City Company's office at Texas City. The invoices read, 'Bought of W. E. Fall' or 'Sold to B. & R. Company by W. E. Fall.' I forget the exact wording of the printed voices. After the change was made, invoices were given me by Mr. Crandall and after the change was made the invoices read, 'Bought of W. H. Lloyd, Jr.,' or 'Sold to B. & R. Company by W. H. Lloyd, Jr.' My recollection is that Crandall asked me to send him regular invoices to replace the altered invoices, though I do not recollect whether or not this was ever done."

W. E. Fall was insolvent at this time. If there is any testimony in the record showing that Lloyd was ever paid or that he ever claimed anything for this piling, it is not pointed out in appellant's brief. The above testimony of W. E. Fall, which is uncontradicted, justifies, if it does not require, the finding that the so-called sale of the piling to Lloyd was without consideration and no title passed or was intended to be passed to Lloyd by the substitution of his name for that of W. E. Fall in the invoices for said piling, but that said substitution and pretended sale was made for the sole purpose of defeating appellee in the collection of his debt, and these facts were all known to appellant's agent, Crandall.

Prior to the trial in the court below appellant had obtained a judg-

ment in the original suit against W. E. Fall for the amount claimed by him.

The first assignment of error presented in appellant's brief and the proposition submitted thereunder, are as follows:

"The court erred in holding that the bond filed is in compliance with law and sufficient to authorize the issuance of a writ of garnishment, in this, that there is nothing upon the face of the bond and no evidence *aliunde* to show that the U. S. Fidelity and Guaranty Company is authorized by law to become surety upon said bond."

Proposition.—"Where the authority of a corporation to become surety upon a statutory bond is conditioned upon certain prerequisites being fulfilled, the performance of such prerequisites must affirmatively appear."

This assignment will not be considered because it is not followed by any statement from the record explaining and supporting the proposition, as required by Rule 31. In the absence of such statement we can not presume what the bond shows upon its face, nor that it was excepted to in the court below on the ground urged in the assignment, nor that the court made the ruling complained of in the assignment. It is unnecessary to cite authorities to sustain the ruling that assignments of error not followed by the statement required by the rule should not be considered.

The second and third assignments, which complain of rulings of the trial court refusing to quash the writ of garnishment because of alleged defects in the bond, are in the same condition as the first assignment, and for the reason above stated will not be considered.

If these assignments were followed by a statement from the record as required by Rule 31, none of them could be sustained because the record fails to show that any of the objections to the bond made in the assignments were made in the court below, and such objections when urged for the first time in the appellate court are not entitled to consideration. Merrielles v. Keokuk Bank, 5 Texas Civ. App., 483 (24 S. W., 565); Seinsheimer v. Flanagan, 17 Texas Civ. App., 427 (44 S. W., 31).

Under its fourth and fifth assignments of error appellant complains of the judgment of the trial court on the ground that under the contract between appellant and W. E. Fall the title to the piling in controversy did not pass to appellant until said piling was delivered at Texas City, and therefore appellant can not be held liable for the value of the piling in possession of the Creosoting Company at Beaumont and that in transit from Beaumont to Texas City at the time the writ of garnishment was served.

No conclusions of fact and law were requested by appellant and the judgment rendered by the trial court contains only a general finding in favor of appellee. If, as pleaded by appellee, the sale by W. E. Fall to Lloyd was a fraud and a sham, wholly without consideration, and no title was intended to be passed thereby, and appellant had knowledge of

these facts when it received the piling from Lloyd, it in fact received said piling as the property of W. E. Fall. The piling having been delivered at Texas City and appropriated by appellant prior to the filing of its answer, appellant would, under the facts pleaded by appellee, be liable to him for the value of said piling, regardless of the question of whether the title to the piling had passed to appellant when it was delivered to the creosoting company at Beaumont.

We have found that the evidence is sufficient to sustain appellee's plea that the sale to Lloyd passed no title. The judgment of the trial court being authorized upon this finding, and there being nothing in the record to indicate that it was not based thereon, said judgment must be sustained, and the question of whether under the contract between appellant and Fall the title to the piling passed upon its delivery to the creosoting company at Beaumont, is immaterial.

We are, however, of opinion that under the contract as understood and acted upon by appellant and Fall the title to the piling passed to appellant when it was delivered to and accepted by the International Creosoting Company at Beaumont. This piling was all consigned by R. D. Chapman to the Texas City Company at Texas City, with directions that it be stopped at the creosoting works for treatment. The record shows that Fall purchased the piling from Chapman, and it must be held that in consigning the shipment to the Texas City Company, Chapman was acting for and under the direction of Fall. Under the contract between appellant and the Texas City Company that company, through its agent Crandall, was authorized to act and did act for appellant in receiving the piling, and a consignment to the Texas City Company was in effect a consignment to appellant. After the piling had been treated by the creosoting company it was shipped by that company to Texas City as ordered by Crandall, and upon bills of lading showing that it was consigned to the Texas City Company by the creosoting company. The price agreed to be paid W. E. Fall by appellant for the piling was from eleven and four-fifths to fourteen and four-fifths cents per linear foot, including all freight charges, and the cost of creosoting said piling, which was paid by appellant, was from twenty to thirty-five cents per foot. It seems to us that these facts sustain the conclusion that the piling became the property of appellant when it was received by the creosoting company, and that all title thereto then passed from Fall. It would be unreasonable to hold that the parties intended that the piling should remain the property of Fall after appellant had expended more than double its original cost in having it creosoted and thereby greatly increasing its value. We think the language of the contract before set out, that the piling was to be furnished by Fall f. o. b. the cars at Texas City, in the light of the facts before stated, should be construed to mean nothing more than that the price of the piling named in the contract should include the freight charges to Texas City.

An agreement to sell goods f. o. b. cars at a designated place will ordinarily be regarded as an agreement to deliver the goods at such desig-

nated place, but the meaning of the term f. o. b. depends on the connection in which it is used, and if the meaning of the contract is doubtful the construction placed upon it by the parties will be adopted.

While this contract might be construed as a contract on the part of Fall to deliver the piling at Texas City, this is not its necessary construction, and we think the evidence shows that the parties to the contract treated the piling as the property of appellant as soon as it was received and accepted by the creosoting company, and we are warranted in adopting this as the proper construction of the contract. This construction of the contract is not forbidden by the fact that Fall is not shown to have ever demanded or received pay for the piling until after it was received by appellant at Texas City.

The fifteenth assignment of error and the proposition submitted thereunder are as follows:

"The court erred in holding that the sale of certain piling to W. H. Lloyd, Jr., was void, and that garnishee was liable to plaintiff in this suit for the value of said piles, and that said W. H. Lloyd, Jr., was not a necessary party to this suit."

Proposition.—"When the controverting affidavit states that defendant fraudulently and without consideration conveyed property to a third party after the service of the writ, and that garnishee participated with such parties in executing such fraudulent scheme, and such third party afterwards conveys such property to garnishee and is not made a party to the suit, then garnishee is entitled to his discharge."

This assignment as interpreted by the proposition does not raise the issue of the sufficiency of the evidence to sustain the finding that the pretended sale to Lloyd was a sham. We have, however, already found that the evidence was amply sufficient to sustain the finding that said sale was without consideration and passed no title to Lloyd and that appellant had knowledge of these facts.

Lloyd was not a necessary party to this proceeding. At most he could only be regarded as a proper party, and the failure of appellee to make him a party should have been objected to by a plea in abatement or by exception presented in the court below, and no such plea or exception was presented by appellant. Shelby v. Burtis, 18 Texas, 648; Hill v. Newman, 67 Texas, 265; Davis v. Wills, 47 Texas, 162; Perez v. Everett, 73 Texas, 433.

It would serve no useful purpose to discuss the remaining assignments in detail. Some of them are not followed by a proposition as required by the rules and are not submitted as propositions in themselves, others are not followed by a statement as required by Rule 31. Such of them as are properly presented have been duly considered, and none of them in our opinion should be sustained.

We are of opinion that the judgment of the court below should be affirmed and it is so ordered.

*Affirmed.*