### VON HARTEN & CLARK, Inc., v. NEVELS et al. (No. 1849.)

(Court of Civil Appeals of Texas. Amarillo. Nov. 9, 1921. Rehearing Denied Nov. 23, 1921.)

**1. Sales ⬅72(1)—Contract to sell at specified price "basis middling" did not require delivery of middling cotton.**

Contract to sell specified number of bales of cotton at specified price "basis middling f. o. b. Tahoka," *held* not to obligate sellers to deliver middling cotton, but merely made middling cotton the basis in ascertaining the price to be paid for other grades, in view of custom to grade and classify cotton at the time of delivery as the basis of settlement.

**2. Sales ⬅151—Seller's readiness to deliver at time and place sufficient performance on seller's part if contract requires buyer to receive it at such place.**

Ordinarily where seller is to deliver articles at a particular place at which buyer is to receive them, or provide vehicles for transportation, or inspect, weigh, or measure them, the seller performs his part of the contract if he is ready to deliver at the time and place, though actual delivery is defeated by buyer's failure to perform.

**3. Sales ⬅83—Contract to sell cotton basis middling "f. o. b." at particular 'point required buyer to receive and grade cotton at such place at specified time.**

Where contract provided for sale of specified number of bales of cotton at specified price "basis middling f. o. b. Tahoka, to be delivered any day not later than" specified date, and, where there was a custom requiring buyer of cotton to be graded in order to ascertain amount due to have representative at the time and place of delivery of cotton to grade and classify it, buyer's failure to be present in person or by representative at Tahoka on the specified date to receive, classify and grade the cotton, constituted a breach of the contract, since classification of the cotton delivered was necessary to ascertain the price, and since such grading of cotton was to be done at Tahoka, notwithstanding use of term "f. o. b."; such term not requiring cotton to be loaded on cars in order to make a tender thereof by the seller, but merely indicating that cotton would be placed on car at seller's expense.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, F. O. B.]

**4. Customs and usages ⬅13—Parties to contract presumed to contract in reference to usage or custom prevailing in business to which contract relates.**

Where there is nothing in the agreement to exclude the inference, the parties are always presumed to contract in reference to the usage or custom which prevails in the particular trade or business to which the contract relates, and usage is admissible for the purpose of ascertaining with greater certainty what was intended by the parties.

**5. Sales ⬅54—Time of essence of contract where market was fluctuating daily.**

Time *held* of the essence of a contract to sell cotton at particular price, to be delivered before specified date, in view of evidence that the market was fluctuating daily.

Appeal from District Court, Lynn County; W. R. Spencer, Judge.

Suit by Von Harten & Clark, Inc., against W. D. Nevels and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Roscoe Wilson, of Lubbock, for appellant. Percy Spencer, of Lubbock, for appellees.

HUFF, C. J. Appellant, Von Harten & Clark, Inc., as plaintiff, brought suit against

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

W. D. Nevels, G. E. Lockhart, and W. B. Slaton for damage on alleged breach of contract of sale for one hundred bales of cotton. It is alleged on the 25th day of September, 1919, the appellees, through W. B. Slaton, sold to G. E. Maedgen, who assigned the contract to appellant. The contract was negotiated over the telephone and later confirmed by letter. The confirmation letters state the contract as follows:

"This will serve to confirm purchase from you by telephone one hundred bales of cotton at $.31, basis middling, f. o. b. Tahoka, to be delivered any day not later than the 20th day of October."

The appellee Lockhart confirmed the same by letter:

"Some days ago Mr. W. D. Nevels and myself sold to you through Mr. W. B. Slaton one hundred bales of cotton, to be delivered on cars Tahoka, Texas, on or before October 20th, at thirty-one cents, middling basis, which contract for myself and Mr. Nevels I beg to confirm."

It is alleged that appellees failed to deliver the cotton on or before the 20th day of October; that on October 21st, appellants through its agent, called upon appellees and demanded delivery which appellees refused. By reason thereof appellant was damaged $3,662.45, the difference between the contract price and market price at the time and place of delivery.

In addition to a general denial and other special pleas, the appellee pleaded the contract was entered into in contemplation of—

"the invariable custom and rules among persons dealing in spot cotton sold upon contracts for future delivery for the buyer to have some one at the point of delivery upon the exact day and date of delivery to grade and accept the same and give shipping instructions, etc.; that in the contract sued upon there was no agreed price per pound understood between the parties, but the defendants merely undertook to deliver to the said C. E. Maedgen 100 bales of merchantable cotton; that the cotton raised in Lynn and surrounding counties during the fall of 1919 was of several grades, and of this fact the said C. E. Maedgen and the plaintiff were fully advised; that it was in the contemplation of the said C. E. Maedgen and these defendants, and it is and was an invariable custom among cotton buyers and sellers, that the said 100 bales of cotton were to be accepted whether the same were in whole or in part middling, good middling, low middling, strict middling, or otherwise; that the price of cotton, while extremely fluctuating from day to day, is always well defined at any particular time as between the respective grades thereof, and in accordance with the universal custom among cotton buyers and sellers and brokers it was the duty of said C. E. Maedgen and of the plaintiff, if it had any lawful connection with the said purchase and sale, to be at Tahoka, Tex., or have some one there on the 20th day of October, 1919, and not later, to grade said cotton and accept the same, and to come to some understanding with these defendants as to the price to be paid and to give these defendants some instruction as to how, when, and where to ship the same and upon whom and through what bank to draw for the purchase price."

It is alleged also that appellant was not present in person nor by representative to receive the cotton on the day agreed upon and not until long after. They also alleged their readiness to have delivered the cotton on that day. The case was submitted to a jury upon special issues and upon their finding the court rendered judgment for the appellees. The findings of the jury are as follows:

"(1) That it was the contract between plaintiff and defendant that the 100 bales of cotton at basis of 31 cents middling was to be delivered f. o. b. cars Tahoka, Tex., not later than October 20, 1919.

"(2) That the defendants were ready and willing to deliver to plaintiff 100 bales of cotton, middling basis, at 31 cents on October 20, 1919.

"(3) That S. W. Staton, agent of plaintiff, came to Tahoka, Tex., and demanded delivery of the cotton October 23, 1919.

"(4) That the market value of middling cotton, Tahoka, Tex., October 20, 1919, was 35 cents per pound.

"(5) That it was the general custom among persons dealing in spot cotton or contracts for future delivery for the buyer to have a representative at the place of future delivery on the day for delivery to grade and classify the cotton, settle for same, and give shipping instructions.

"(6) That Von Harten and Clark were financially able to carry out the contract and pay for said cotton October 20, 1919, and also October 23, 1919, when its agents called on defendants for delivery.

"(7) That the defendants did not tender to plaintiff f. o. b. cars, or to the railway company at Tahoka, for plaintiff, 100 bales of cotton of the grade specified in said contract on October 20, 1919."

Appellant's assignment is based upon its motion in the trial court for a judgment, on the ground that the jury found that the defendant sold to plaintiff 100 bales of cotton at a basis of 31 cents middling, to be delivered f. o. b. Tahoka, Tex., not later than October 20, 1919, and also found that the defendants did not tender to plaintiff f. o. b. cars nor to the railway company at Tahoka, Tex., for plaintiff, the cotton, and found that plaintiff was financially able to pay at said date, and because plaintiff, through its agent, demanded delivery on the 23d day of October, 1919, and that defendants refused delivery.

[1] The appellant asserts, where the time is fixed in a contract of sale, the vendor becomes the first actor, and that, as the contract calls for delivery f. o. b., it does not call for payment or tender before delivery to a carrier, and that usage or custom cannot

contradict or enlarge a contract that requires no explanation. Appellant's propositions, as abstract propositions, may be in the main correct. The contract was for 100 bales of cotton at 31 cents, basis middling, f. o. b. Tahoka, to be delivered any day not later than the 20th day of October. The appellant assumes that appellees were to deliver middling cotton. Such are not the terms of the contract. They were to deliver 100 bales at 31 cents, basis middling. This indicates they had agreed on middling cotton as a basis in arriving at the price to be paid for other grades in the 100 bales. Manifestly cotton delivered above or below middling in grade would have been a compliance with the contract. The testimony of Mr. Maedgen, who made the contract, is to the effect that there are several grades of cotton—

"such as good middling, strict middling, middling fair, middling, and low middling. It is also a fact that there is a recognized difference in the prices of the different grades. The basis from which these prices are figured is the price of middling cotton."

He also testified that it was an invariable custom to grade and classify cotton at the time of delivery as the basis of settlement.

"The variation in the price according to grades of cotton is pretty well defined. If there had been as much as 10 bales of strict middling, they would have been paid more than 31 cents a pound for it on a middling basis, and, if there had been some low middling, they would have been paid a little less. That would have to be figured out before settlement could be made."

The finding of the jury as to the custom is not challenged as not being supported by the evidence. It seems to be the contention of the appellant as the vendor becomes the first actor where time is fixed for delivery, that in order to escape liability they must have tendered the cotton on board the cars at Tahoka, and to have notified the appellant thereof. The appellees did become the first actors in assembling the cotton at that point on the day required by the contract. The appellant had no one present at that time and place to receive or accept the cotton.

[2] Ordinarily, where the seller is to deliver articles at a particular place, at which the buyer is to receive it, or provide vehicles for further transportation, or inspect, weigh, or measure, the seller will perform on his part if he is ready to deliver at the time and place, though actual delivery may be defeated by default of the buyer to perform on his part. 2 Mechem on Sales, 1198; Benjamin on Sales, §§ 365, 366.

[3] Under the contract in this case and the evidence classification and grading the cotton was necessary in order to ascertain the amount due. This evidently was to be done at Tahoka. Grades, weight, and classification were not to be made or guaranteed at destination or some other point; nor were appellee's grades to be accepted. In order to complete a sale, it was therefore necessary for appellant to accept the cotton and to grade the same at Tahoka. It is insisted that f. o. b. required the cotton to be loaded on the cars in order to make a tender. The contract does not mean the cotton should be stored on the cars. The evident purpose in calling for the cotton to be placed on board the cars was for transportation. The appellees were not required by the contract to transport to any particular point or to furnish cars for transportation; that evidently was the duty of appellant. The initials f. o. b. mean "free on board." "As applied to a sale of merchandise designed for shipment, a term used to indicate that it will be placed on a car or vehicle free of expense to a purchaser or consignee." 19 Cyc. 1082; Harris v. Moller, 207 S. W. 961; Burkitt v. Berry, 143 S. W. 1187; Russell & Co. v. Heitmann, 86 S. W. 75; Barnett v. Fall, 62 Tex. Civ. App. 391, 131 S. W. 644. As illustrating the meaning of the term we quote a note from 19 Cyc. 1082:

"Delivery free on board (as used in a contract for the delivery of goods) only means 'the price shall be that which we stipulated for and you shall not have to pay for the wagons or carts necessary to carry the clay from the place where it is dug. We will bear all those charges and put it free on board the ship, the name of which you are to furnish.' Ex parte Rosevar China Clay, 11 Ch. D. 560."

We think the above is the meaning of the term as used in the instant contract. The grade, classification, and the selection of the cars and the route or destination of the transportation were with the buyers in this case. We quote from Dwight v. Eckert, 117 Pa. 490, 12 Atl. 32, the principle which we believe controls this case:

"Upon which of the parties to what has been termed the 'sold note' of January 15, 1880, rested the obligation to act first? It is a well-established principle of the law that in a contract for sale and delivery of goods 'free on board' vessel the seller is under no obligation to act until the buyer names the ship to which the delivery is to be made; for, until he knows that, the seller could not put the goods on board."

The railroad in this case was not made the agent of the buyer to grade, classify, or fix the sum to be paid for the cotton or to determine what cars should be used, the time of shipment, or the train upon which it should be shipped, or the destination of the shipment.

[4] The usage or custom, we think, was made part of this contract and is necessary to explain or interpret it. The parties were evidently dealing with reference thereto. The usage was not repugnant to the contract

and did not vary its terms and was not inconsistent with its express terms.

"Where there is nothing in the agreement to exclude the inference, the parties are always presumed to contract in reference to the usage or custom which prevails in the particular trade or business to which the contract relates, and usage is admissible for the purpose of ascertaining with greater certainty what was intended by the parties." Dwyer v. City of Brenham, 70 Tex. 30, 7 S. W. 599; Heidenheimer, etc., v. Alexander, 205 S. W. 458; Orient Mut. Ins. Co. v. Reymershoffers Sons, 56 Tex. 234.

It was therefore necessary for the appellant to have a representative at the place of delivery on the day agreed upon to grade and classify the cotton, to settle for same, and give shipping instructions according to the custom and usage of the trade. This the appellant did not do, and hence is in no position to recover on a breach of contract.

[5] We think under the undisputed facts of this case that time was of the essence of the contract. The market was fluctuating daily and sufficiently shows time was of the essence of the contract, and the stipulation in regard to time must be literally complied with. Todd v. Caldwell, 10 Tex. 236; Edwards v. Atkinson, 14 Tex. 373; Berg v. San Antonio Street Railway Co., 17 Tex. Civ. App. 291, 42 S. W. 647, 43 S. W. 929; Gaut v. Dunlap, 188 S. W. 1020; Simpkins, Contracts and Sales, p. 873.

"Time may become of the essence of a contract for the sale of property, not only by express stipulation of the parties, but from the very nature of the property itself, and especially when it is subject to sudden, frequent, or great fluctuation in value, as in the case of mining property. Contracts for the purchase of stock are of this description, and the reason assigned is that the daily fluctuation in the price render a punctual performance of the essence of the contract. 'If, therefore,' said Anderson, B., 'the thing sold be of greater or less value according to the effluxion of time, it is manifest that time is of the essence of the contract, and a stipulation as to time must be literally complied with in equity as well as in law." 2 Elliott on Contracts, § 1557; 4 Page on Contracts, §§ 2103, 2104.

The jury's findings negative a breach of the contract on the part of appellees, but find appellant was not present to receive the cotton under the usage of the business. It was not necessary, as we conceive it, for appellee to have notified appellant to be present to receive the cotton or to give shipping instructions; that was the obligation resting on appellant under the contract. The evidence is sufficient to have authorized a finding by the court that all of the 100 bales was not to grade middling, but that middling was only the basis to fix the value of the grade above and below middling. There is some conflict in the evidence as to whether the appellees notified appellant's agent that they would not deliver the cotton on the 20th. The evidence is sufficient to authorize a finding that the appellees made no such refusal. The jury find appellees were ready and willing to deliver the 100 bales of cotton on that day. The judgment will be affirmed.